UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

EAGLE ONE ROOFING CONTRACTORS,
INC.,

                    Plaintiff,

       -against-                                          **MEMORANDUM & ORDER**
                                                          **16-CV-3537 (NGG) (SJB)**

DAWN M. ACQUAFREDDA, JACK
ACQUAFREDDA, ANTHONY SABATINO,
ACCORD, INC., ACCORD SALES, INC.,
RICHARD YOPP, JR., RICHARD STANKEY,
and YVONNE CARNABUCI,

                    Defendants.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       Plaintiff Eagle One Roofing Contractors, Inc. ("Eagle One"), a construction company,

brings this action claiming violations of the Racketeering Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1964, conspiracy to violate RICO, 18 U.S.C. § 1962(d), and

violations of state common law. (Am. Compl. (Dkt. 43).) The objects of this suit are former

employees of Plaintiff—Defendants Dawn M. Acquafredda, Jack Acquafredda, and Anthony

Sabatino—and former subcontractors of Plaintiff—Defendants Accord, Inc., Accord Sales, Inc.,

Richard Yopp, Jr., Richard Stankey, and Yvonne Carnabuci. (Id.) Plaintiff alleges that

Defendants engaged in a scheme to defraud Plaintiff by submitting fictitious work invoices. (Id.)

       Before the court are two motions to dismiss: one filed by Defendants Dawn Acquafredda

and Jack Acquafredda (the "Acquafredda Motion") (Mot. to Dismiss ("Acquafredda Mot.") (Dkt.

46)), and the other filed by Defendants Accord, Inc., Accord Sales, Inc., Richard Yopp, Jr.,

Richard Stankey, and Yvonne Carnabuci (the "Accord Motion") (Mot. to Dismiss ("Accord

                                           1

Mot.") (Dkt. 47)).  Both motions are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and both seek to dismiss all claims filed against the moving parties.  Defendant Anthony Sabatino has not appeared in the case and is the only defendant not moving to dismiss claims in the Amended Complaint (the "Complaint").

For the reasons set forth below, the Acquafredda Motion is GRANTED IN PART and DENIED IN PART, and the Accord Motion is GRANTED IN PART and DENIED IN PART.

As to Raymond Stankey and Jack Acquafredda, all of Plaintiff's claims—RICO claims, RICO conspiracy claims, and all state law claims—are DISMISSED without prejudice.  As to Dawn Acquafredda, Accord, Inc., Accord Sales, Inc., Yvonne Carnabuci, and Richard Yopp, Jr., all of Plaintiff's claims—RICO claims, RICO conspiracy claims, and all state law claims— remain.  Additionally, because Anthony Sabatino did not move to dismiss any of the claims against him, all claims against him also remain.

## I.    BACKGROUND

### A.    Facts

Eagle One is a construction company that does business primarily in New York, New Jersey, Connecticut, and Pennsylvania. (Am. Compl. ¶¶ 24-25.)  Eagle One brings this action against its former employees Dawn Acquafredda, Jack Acquafredda, (together, "the Acquafredda defendants") and Anthony Sabatino, (collectively "the insider defendants"), as well as against Eagle One's former subcontractors: Accord, Inc., Accord Sales, Inc., (together, "Accord"), Richard Yopp, Raymond Stankey, and Yvonne Carnabuci (collectively "the Accord defendants").  (Am. Compl. ¶¶ 13-21.)  Eagle One alleges that the insider defendants schemed together with the Accord defendants to defraud Eagle One of over $1.3 million by having Eagle

2

One make out checks to Accord, a subcontractor of Eagle One, based on false invoices submitted by the Accord defendants for work that was never done. (Am. Compl. ¶ 2.)

Dawn Acquafredda was the president and sole shareholder of Eagle One between 1993 and 2007, during which time she also worked as the office manager. (Id. ¶ 27.) In 2008, she sold Eagle One to two of her brothers, Dan and Vincent Sabatino. The oral sale was memorialized in two later written agreements made in June 2009 and August 2011. (Id. ¶¶ 32-35.) After selling the company to her brothers, Dawn Acquafredda continued to be employed by Eagle One as the office manager "with responsibilities over significant parts of its operations, including the accounts payable functions." (Id. ¶ 30.) The other insider defendants—Anthony Sabatino, another of Dawn's brothers, and Jack Acquafredda, Dawn's husband—both worked for Eagle One as field supervisors. (Id. ¶ 37.) Field supervisors are responsible for overseeing Eagle One employees on job sites and supervising the work of Eagle One subcontractors. (Id. ¶ 38.)

The Complaint alleges that, at some point after August 2011, all defendants formed a conspiracy to defraud Eagle One. (Id. ¶ 40.) The alleged fraud would be accomplished by the Accord defendants sending "fictitious" invoices to Eagle One "by United States mail, by fax over interstate telephone lines or email through the internet for work that was not being done." (Id. ¶ 41.) Dawn Acquafredda, who was in charge of processing payment for Eagle One, would ensure that the invoices were processed and authorize the issuance of checks payable to Accord. (Id. ¶ 43.) Jack Acquafredda and Anthony Sabatino, the official Eagle One supervisors at the job sites, "aided and abetted the scheme by creating the false appearance that the work for which Accord was receiving payments was actually being done in the field." (Id. ¶ 45.) The Accord

3

defendants "then deposited the embezzled funds into an Accord bank account and [then] distributed the illicit proceeds among the members of the conspiracy." (Id. ¶ 44.)

Eagle One points to two jobs in particular where it alleges fraud. The first job was the project known as the 55 Water Street Job. In connection with that job, Accord issued invoices from September 24, 2013, through January 12, 2015, totaling $389,811.33, however, all the work for the job had actually been completed nine months earlier, in January 2013. (Am. Compl. ¶48.) The second job was the project known as the American Express Job, for which Accord had been hired to perform tile work for a kitchen costing approximately $30,000. (Id. ¶ 49.) Accord, however, submitted invoices from July 16, 2012, through October 15, 2014, totaling $757,778.52 for work relating to this job. (Id.) The invoices for both of these projects are attached to the Complaint as Exhibit 1. (Invoices (Dkt. 43-1).) Eagle One claims that it first discovered evidence of this alleged fraud in January 2015, when its external accountant began asking questions about certain entries in Eagle One's records. (Am. Compl. ¶ 50.) Pursuant to a subpoena, Eagle One obtained a canceled check that had been issued by Accord, and signed by Yopp, made payable to Sabatino and Dawn Acquafredda. (Id. ¶ 52.) The checks covered an eight-month period during which Dawn Acquafredda received $136,586 from Accord, and Sabatino received $47,500 from Accord. (Id. ¶ 53.) Copies of the canceled checks are attached to the Complaint as Exhibit 4. (Canceled Checks (Dkt. 43-4).)

### B.    The Complaint

Eagle One alleges that Defendants have committed RICO violations pursuant to 18 U.S.C. § 1962(c) and demands relief under 18 U.S.C. § 1964(c). (Am. Compl. ¶ 103.) Under Section 1964(c), "[a]ny person injured in his business or property by reason of a violation of

section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." A plaintiff asserting a civil RICO claim must allege that he was injured in his business or property because of a defendant's acts in violation of any of the provisions of 18 U.S.C. § 1962. See 18 U.S.C. § 1964(c).

Plaintiff alleges that Defendants have committed the following predicate acts necessary to establish a RICO violation: "18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1341 (mail fraud): 18 U.S.C. § 1952 (racketeering); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. 1957(a) & (f) (monetary transactions in criminal proceeds); 18 U.S.C. § 2314 (transportation of stolen property); 18 U.S.C. §1952(a) (travel act criminal activity); and New York Penal Law §180.03 & 180.08 (commercial bribery and commercial bribe receiving in the first degree)." (Am. Compl. ¶ 91.) Eagle One also asserts claims of RICO conspiracy under 18 U.S.C. § 1962(d). (Am. Compl. ¶ 106.)

Additionally, Eagle One asserts, against all defendants, the common law claims of fraud, fraudulent concealment, conversion, and unjust enrichment; against the insider defendants, breach of fiduciary duties; and, against the Accord defendants, aiding and abetting a breach of fiduciary duties. (Id. ¶¶ 113-148.)

**C.    Procedural History**

Defendants moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 16, 2017. The Accord defendants submitted a Memorandum in Support of the Motion to Dismiss ("Accord Mem.") (Mem. in Supp. of Mot. to Dismiss ("Accord Mem.") (Dkt. 46)) as did Dawn and Jack Acquafredda ("Acquafredda Mem.") (Mem. in Supp. of Mot. to

5

Dismiss ("Acquafredda Mem.") (Dkt. 47)). Eagle One submitted a Memorandum in Opposition (Pl. Mem. (Dkt. 48)) arguing that the action should not be dismissed. The Accord defendants submitted a Reply Memorandum ("Accord Reply Memo") (Reply Mem. in Supp. of Mot. to Dismiss ("Accord Reply Mem.") (Dkt. 49)), as did the Acquafredda defendants ("Acquafredda Reply Memo") (Reply Mem. in Supp. of Mot. to Dismiss ("Acquafredda Reply Mem.") (Dkt. 50)). Anthony Sabatino has not appeared in this action and is not a party to the motions before the court.

Before this case was initiated, on March 24, 2016, Dawn Acquafredda commenced an action in the Supreme Court of the State of New York, County of Nassau, Acquafredda v. Sabatino, No. 601979/2016 (N.Y. Sup. Ct. filed Mar. 24, 2016) (the "state court action"), claiming that her brothers—now the sole shareholders of Eagle One—breached the written sale agreements related to her sale of Eagle One. (Acquafredda Mem. at 5.) The defendants in that action responded with an affirmative defense that Dawn Acquafredda had forfeited her rights under the sale contract because of the alleged fraud at issue before this court. (Id.) The Acquafredda defendants claim that the action in this court was instituted "in retaliation" for Dawn Acquafredda's state court action. (Id.)

## II.    LEGAL STANDARDS

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

Plaintiffs who raise claims involving allegations of fraud must also satisfy the stringent pleading burden set forth in Fed. R. Civ. P. 9(b), which demands that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement governs civil RICO complaints alleging predicate acts of mail fraud and wire fraud. Morrow v. Black, 742 F. Supp. 1199, 1203 (E.D.N.Y. 1990) (discussing pleading requirements for predicate acts of mail fraud and wire fraud). In order to satisfy the particularity standard set forth in Rule 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (citations omitted). Allegations of fraud that fail to conform to this standard must be dismissed. Id. at 88-89. However, plaintiffs whose "complaints [are] dismissed under Rule 9(b) are almost always granted leave to amend unless plaintiffs have already had one opportunity to plead fraud with greater specificity." Bank of Vermont v. Lyndonville Sav. Bank & Tr. Co., 906 F. Supp. 221, 228 (D. Vt. 1995) (quotation marks omitted).

In addition, the courts of this Circuit have frequently noted that alleged RICO violations "must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations." Mathon v. Marine

7

<u>Midland Bank, N.A.</u>, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995); <u>see also</u> <u>Schmidt v. Fleet Bank</u>, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("[Civil RICO] is an unusually potent weapon—the litigation equivalent of a thermonuclear device . . . [C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." (quotation marks and internal citations omitted)).

## III.    DISCUSSION

### A.    Colorado River Abstention

As a preliminary matter, the Acquafredda defendants argue that, because there is an ongoing state court action involving some of the same parties and claims as the instant RICO case, the court should dismiss this action pursuant to the <u>Colorado River</u> abstention doctrine, so as to avoid inconsistent rulings and promote judicial economy. (Acquafredda Mem. at 6 (citing <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976)).) For the reasons given below, the court finds the <u>Colorado River</u> abstention doctrine inapplicable to this case.

#### 1.    Legal Standard

"Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." <u>Colorado River</u>, 424 U.S. at 813-14.

> Unlike other abstention doctrines related to "considerations of proper constitutional adjudication and regard for federal-state relations," <u>Colorado River</u> abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Thus Colorado River abstention permits dismissal only in the rare case when (1) the relevant state and federal actions are "concurrent" or "parallel" and (2) evaluation of a six-factor test weighs in favor of abstention.

8

DDR Constr. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 643–44 (S.D.N.Y. 2011) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). Dismissal under Colorado River will be appropriate only under extremely limited circumstances. "The Court's task is not to find some substantial reason for the exercise of jurisdiction; rather, the task is to ascertain whether there exists exceptional circumstances, the clearest of justifications, that can suffice under Colorado River to justify the surrender of that jurisdiction." Jamaica Hosp. Med. Ctr. v. United Health Grp., Inc., 584 F. Supp. 2d 489, 493 (E.D.N.Y. 2008) (quoting Moses H. Cone, 460 U.S. at 25-26) (quotation marks omitted).

"The threshold question in Colorado River abstention analysis is whether the state and federal actions at issue are 'parallel.'" DDR, 770 F. Supp. 2d at 644 (citing Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998). The actions are not parallel merely because "some factual and legal issues involved in a later RICO action in federal court overlap with the issues involved in an earlier state court action." Bernstein v. Hosiery Mfg. Corp. of Morganton, 850 F. Supp. 176, 182 (E.D.N.Y. 1994); see Wells Fargo Century, Inc. v. Hanakis, No. 04–CV–1381 (SLT), 2005 WL 1523788, at *9 (E.D.N.Y. June 28, 2005) ("The mere existence of overlapping issues does not make the causes parallel."). Rather, "suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." DDR, 770 F. Supp. 2d at 627 (citing Dittmer, 146 F.3d at 118). The parties and issues need not be identical for Colorado River abstention. Nonetheless, resolution of the state action must "dispose of all claims presented in the federal case." Id. (emphasis in original) (citing Stone v. Patchett, No. 08-CV-5171 (RPP), 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009)). Additionally, "the presence of a federal claim as the basis of jurisdiction raises the level of

9

justification needed for abstention." <u>Bernstein</u>, 850 F. Supp. at 182 (citing <u>Colorado River</u>, 424 U.S. at 815–16).

> ### 2.   <u>Application</u>

Defendants argue that this action is parallel to the ongoing state court action because the parties are the same and the issues are related. (Acquafredda Mem. at 7.) In the state court action, Dawn Acquafredda is suing the Sabatino brothers, sole shareholders of Eagle One, for breach of contract related to her sale of Eagle One. (<u>Id.</u>) The state court defendants' defense to the breach of contract claim is that "[Dawn Acquafredda,] while working for [Eagle One,] embezzled over $1.3 million together with her co-conspirators." (Acquafredda Reply Mem. at 1.) Accordingly, Defendants argue: "[S]ince the instant RICO case are the defenses [sic] in the State Court Action, then the state court case must make a determination on the entirety of the RICO case." (<u>Id.</u> at 2)

The state action, however, is not parallel because neither the parties nor the issues are substantially the same. First, Dawn Acquafredda is the only defendant before this court who is a party in the state court action. Invoking <u>Colorado River</u> abstention is thus improper because it also would mean dismissing Eagle One's claims against all defendants, most of whom are not parties in the state court action. See <u>DDR</u>, 770 F. Supp. 2d at 645 ("Abstention under <u>Colorado River</u> is unwarranted for the additional reason that invocation of that doctrine would dismiss several defendants . . . who are not parties to this [action]."). "Though abstention does not require that the parties in the relevant suits be identical, when dismissal of the federal proceeding would leave a defendant free from <u>any</u> proceeding on issues in question, abstention is unwarranted." <u>Id.</u>

The Acquafredda defendants argue that the additional defendants, not party to the state court action, should not be considered in the Colorado River analysis because they "were included in the instant action simply to harass and pressure Dawn Acquafredda." (Acquafredda Mem. at 7.) However, the court does not accept this assertion on a motion to dismiss. Additionally, Defendants do not explain why adding the Accord defendants would put pressure on Dawn Acquafredda. Defendants also cite to Great South Bay Medical Care, P.C. v Allstate Insurance Co., 204 F. Supp. 2d 492, 497 (E.D.N.Y. 2002), in support of their argument that having additional defendants does not render a case non-parallel. (Acquafredda Mem. at 7.) Defendants misinterpret this case. In Great South Bay, it was the state action that had additional defendants; thus, by abstaining from a concurrent federal case, the federal judge was not dismissing any additional defendants. Here, it is the federal action that has additional defendants.

Furthermore, the issues being litigated are not the same. The state court action is a breach of contract claim. It is true that the state-court defendant's defense in that action is that the plaintiff, a defendant in this case, embezzled funds from Eagle One; however, the question of whether a RICO violation was committed is not before the state court. Nor is the relief requested the same in both actions. If the state court finds that fraud was committed, there will be no liability for RICO damages. In other words, the state court action will not "dispose of all claims presented in the federal case." DDR, 770 F. Supp. 2d at 644 (citing Patchett, 2009 WL 1108596, at *14). That a RICO action can be made in state court as well is irrelevant. See Camabo Indus., Inc. v. Liberty Mut. Ins. Co., No. 15-CV-891 (CM), 2016 WL 368529, at *3 (S.D.N.Y. Jan. 27, 2016) ("To conclude that these tangentially related actions are parallel, and abstain from hearing

11

the instant action, would be akin to forcing [plaintiff] to bring its breach of contract action in state court. Given that there is subject matter jurisdiction here pursuant to 28 U.S.C. § 1332 and generally a strong presumption in favor of the plaintiff's choice of forum, any such holding is untenable."). Because neither the parties nor the issues are substantially the same, the court determines that the cases are not parallel and thus Colorado River abstention is improper. See also In re Comverse Tech., Inc. Derivative Litig., No. 06-CV-1849 (NGG), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006) ("Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction.").[1]

Because the court finds that the instant action is not parallel to the state court action, the court "need not consider whether the six Colorado River factors weigh in favor of dismissal of this case." Id.

**B. RICO**

A plaintiff asserting a civil RICO claim must allege that he was injured in his business or property because of a defendant's acts in violation of any of the provisions of 18 U.S.C. § 1962. See 18 U.S.C. § 1964(c). The Supreme Court has interpreted the injury clause of this statute as limiting standing to plaintiffs whose injuries were caused proximately by the RICO predicate acts. Holmes v. SEC Investor Prot. Corp., 503 U.S. 258, 268 (1992). In order to assert a viable claim that a defendant has violated the provisions of Section 1962, a plaintiff must

---

[1] Defendants also claim that "the federal court is being used as a means of further retaliation against these defendants, and as a tool for harassment." (Acquafredda Mem. at 7 (citing Bernstein v. Hosiery Mfg. Corp. of Morganton, 850 F. Supp. 176, 185 (E.D.N.Y. 1994)). Even if true, this would be relevant to Colorado River abstention only if the cases were parallel. See DDR, 770 F. Supp. 2d at 646 ("Because this Court finds the federal and state proceedings not parallel, whether [plaintiff's] disappointment in the [state] Action motivated [plaintiff] to bring this suit is irrelevant.").

allege (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sedima v. Imrex Co., 473 U.S. 479, 496 (1985).

For the following reasons, the RICO claims against Accord, Yopp, Carnabuci, and Dawn Acquafredda survive the motion to dismiss.  However, the RICO claims against Stankey and Jack Acquafredda are dismissed.

1.    <u>Enterprise</u>

For the following reasons, the court finds that Plaintiff's allegations satisfy the enterprise requirement.

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  This "association-in-fact" requirement has been explained as meaning "a group of persons associated together for a common purpose of engaging in a course of conduct, the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  <u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 173 (2d Cir. 2004) (quoting <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)).  The requirement of an "ongoing organization" is limited:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

<u>Boyle v. United States</u>, 556 U.S. 938, 948 (2009).  Nonetheless, the enterprise cannot consist of unrelated individuals committing isolated fraudulent acts:  "For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular

13

fraudulent course of conduct and work together to achieve such purposes." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (citing First Capital, 385 F.3d at 174).

Defendants argue that Plaintiff has failed to establish the "enterprise" element necessary for a RICO claim. (Accord Mem. at 12-14.) Defendants claim that they are separate individuals who have no common association. (Id. at 13.) Defendants also argue out that Plaintiff's asserted purpose of the RICO enterprise is identical to the alleged pattern of racketeering activity, and therefore fails to allege distinct conduct establishing an enterprise. For the reasons given below, the court rejects Defendants' assertions, and finds that Eagle One has sufficiently pleaded the existence of a RICO enterprise.

"Under the so-called distinctness requirement, a plaintiff must allege the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cruz, 720 F.3d at 120 (citations and quotation marks omitted). The RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Therefore, "by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994).

> However, "[t]his does not foreclose the possibility of a corporate entity being held liable as a defendant under section 1962(c) where it associates with others to form an enterprise that is sufficiently distinct from itself." Thus, "a defendant may be a RICO person and one of a number of members of the RICO enterprise."

Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289, 298–99 (E.D.N.Y. 2017) (citing Riverwoods, at 344). Here, the RICO persons are distinct from the alleged RICO enterprise. Not

only is the enterprise a corporation with its own employees, but it included the insider defendants who were not employees of Accord.  (Am. Compl. ¶ 40.)

In addition to the requirement that the enterprise be distinct from the individual RICO person, it must also be distinct from the underlying conduct that establishes a pattern of racketeering.  See United States v. Turkette, 452 U.S. 576, 583 (1981).  "While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other."  Id.  "Proof of these separate elements [need not] be distinct and independent, as long as the proof offered is sufficient to satisfy both elements."  United States v. Mazzei, 700 F.2d 85, 89 (2d Cir. 1983).

The Second Circuit confirmed this standard in Pavlov v. Bank of New York Co., 25 F. App'x 70, 71 (2d Cir. 2002).  There, the court reversed the district court's decision to dismiss a RICO claim because the plaintiff had failed to establish the enterprise element.  "The district court relied on Eighth Circuit precedent that an association without continuity extending beyond the pattern of predicate racketeering acts does not constitute an enterprise within the meaning of 18 U.S.C. § 1961(4)."  Id.  However, "[o]ur Circuit has rejected the Eighth Circuit's restrictive approach to the enterprise element."  Id. (citing Mazzei at 89-90).  Thus, it is sufficient to allege that there is an enterprise with the stated objective of defrauding the plaintiff.  "The enterprise need not necessarily have a continuity extending beyond the performance of the pattern of racketeering acts alleged, or a structural hierarchy, so long as it is in fact an enterprise as defined in the statute."  Id.; see JSC Foreign Econ. Ass'n Technostroyexport v. Weiss, No. 06-CIV-6095 (JGK), 2007 WL 1159637, at *10 (S.D.N.Y. Apr. 18, 2007) ("Mazzei has not been overruled and remains good law in this circuit."); see also Boyle v. United States, 556 U.S. 938, 947 (2009)

("the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce.").

Plaintiff has sufficiently pleaded a distinct association-in-fact enterprise. Plaintiff's Complaint alleges that Defendants coordinated a scheme whereby the Accord defendants would submit false invoices to Eagle One for work that was never done, and the insider defendants would ensure that Eagle One paid Defendants. (Am. Compl. ¶¶ 41-43.) In return, the Accord defendants paid kickbacks or bribes to the insider defendants. (Id. ¶ 52.) Plaintiff alleges that "each member of the Enterprise knew generally about the role of the others . . ." and that "the enterprise had a common purpose of embezzling Eagle One funds." (Id. ¶¶ 86-87.) Taking Plaintiff's allegations as true, Plaintiff has established that Defendants are not merely individuals. The alleged enterprise worked in concert for a common purpose: defrauding Eagle One. Dawn Acquafredda coordinated the enterprise's activities towards a common goal. The fact that the purpose of the enterprise is identical with the alleged pattern of racketeering does not preclude the finding of an enterprise. See Fuji Photo Film U.S.A., Inc. v. McNulty, 640 F. Supp. 2d 300, 314 (S.D.N.Y. 2009) ("The Complaint further alleges that the association-in-fact was united by a common purpose, namely that of defrauding [Plaintiff]. Accordingly, Plaintiff has sufficiently pled a RICO enterprise under Rule 8(a).").

### 2.    Participation in the Conduct of the Enterprise's Affairs

In addition to pleading the existence of an enterprise, "a civil RICO plaintiff must also plead facts from which it can be inferred that each of the defendants participated, directly or indirectly, in the conduct of the enterprise's affairs." Elsevier, Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (citing 18 U.S.C. § 1962(c) (making it unlawful "to conduct

16

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern

of racketeering activity")).  For the following reasons, the court finds that Plaintiff has satisfied

this requirement as to all defendants except for Raymond Stankey.

"In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,'

one must have some part in directing those affairs."  Reves v. Ernst & Young, 507 U.S. 170, 179

(1993).  In other words, "[f]or purposes of civil RICO, it is not enough to allege that a defendant

provided services that were helpful to an enterprise, without alleging facts that, if proved, would

demonstrate some degree of control over the enterprise."  Elsevier, 692 F. Supp. 2d. at 307-308;

see Aerowest GmbH v. Freitag, No. CV-15-2894 (LW), 2016 WL 3636619, at *3 (E.D.N.Y.

June 28, 2016) ("While each defendant need not have primary responsibility for the functioning

of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit.").

Eagle One alleges that Yvonne Carnabuci's role in the enterprise was to "issue and send

. . . to Dawn Acquafredda fictitious invoices." (Am. Compl. ¶ 41.)  Dawn Acquafredda then

"received the fictitious Accord invoices, entered them into the Eagle One accounting system, and

authorized the issuance of checks payable to Accord." (Id. ¶ 43)  Jack Acquafredda and Anthony

Sabatino's roles were "creating the false appearance that the work for which Accord was

receiving payments was actually being done in the field." (Id. ¶ 45)  Richard Yopp, the owner of

Accord, signed checks to Dawn Acquafredda and Anthony Sabatino as "kickback payments."

(Id. ¶ 81)  Defendants have not argued in their memorandum that these alleged activities do not

amount to operation and management of an enterprise.  Accordingly, for the purposes of this

motion, these acts are treated as constituting participation in the operation and management of

17

the enterprise. See Fuji Photo, 640 F. Supp. 2d at 314 ("At a minimum, the complaint alleges that the defendants exercised discretion in carrying out McNulty's directions.").

The Complaint fails, however, to identify what role, if any, Defendant Raymond Stankey had in the operation or management of the alleged enterprise. Stankey is alleged to have "aided and abetted" in the issuance of the fraudulent invoices (Am. Compl. ¶¶ 8, 95); to have aided and abetted Yopp in committing commercial bribery (id. ¶ 58); and to have deposited, with Yopp and Carnabuci, the fraudulently obtained payments from Eagle One (id. ¶ 80). None of these allegations, which merely lump Stankey with others in the enterprise, amount to "facts that, if proved, would demonstrate some degree of control over the enterprise." Elsevier, 692 F. Supp. 2d. at 308. Accordingly, the RICO charges against Stankey are dismissed. As to the other defendants, however, Plaintiff has satisfied the "participation" requirement.

### 3.    Racketeering Activity: Predicate Acts of Fraud

To plead a "pattern" of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5). Eagle One alleges that Defendants engaged in the predicate acts of mail and wire fraud. (Am. Compl. ¶ 91.) "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000). "As to the first element, a plaintiff must demonstrate (i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." Fuji Photo, 640 F. Supp. 2d at 310 (citing Autuori, 212 F.3d at 115).

Because Rule 9(b) requires a plaintiff to identify the particular statement alleged to be fraudulent, the general rule is that the allegations cannot be made upon information and belief. "There is a recognized exception to this rule, however, that fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge . . . ." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). "Where a plaintiff is permitted to plead on information and belief, the complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Fuji, 640 F. Supp. at 310 (citation omitted). Additionally, "when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000), aff'd, 2 F. App'x 109 (2d Cir. 2001); see DiVittorio, 822 F.2d at 1247 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). Although Rule 9(b) requires that the facts constituting fraud be "stated with particularity," nonetheless, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "Thus, while the 'actual . . . fraud alleged must be stated with particularity . . . the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity.'" Wight v. BankAmerica Corp., 219 F.3d 79, 91–92 (2d Cir. 2000) (quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir.1996)). This is so because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." Id. (citation omitted.)

19

The Accord and Acquafredda defendants argue that Eagle One has failed to allege mail or wire fraud with sufficient particularity.  (Accord Mem. at 10-11; Acquafredda Mem. at 12-13, 18-19.)  Defendants argue that the allegations in the Complaint do not specify which invoices are false, which jobs the allegedly false invoices relate to, or how Defendants allegedly distributed the fraudulently obtained funds.  (Id.)  Furthermore, Defendants argue that even if the fraud is stated with particularity, the Complaint does not sufficiently allege that each defendant participated in at least two predicate acts of fraud.  (Id.)  Because Eagle One is required to plead with particularity the acts of each defendant individually, the court addresses the Complaint's sufficiency with regard to each defendant.

For the following reasons, Eagle One has sufficiently pleaded fraud with regard to Accord, Yopp, and Carnabuci, and Dawn Acquafredda, but it has failed to sufficiently plead fraud with regard to Stankey and Jack Acquafredda.

a.    *The Accord Defendants*

The Complaint alleges that Accord sent invoices requesting payment for work done on the 55 Water Street Job even though no work was being done there at the time.  (Am. Compl. ¶ 48.)  Plaintiff's claim, therefore, is that all of these invoices, totaling $389,811.33, are fraudulent statements knowingly made.  Eagle One admits that Accord did do some work on the American Express job.  (Id. ¶ 49.)  However, the Complaint alleges that Accord sent Eagle One invoices totaling $757,778.52 for work estimated to be worth only $30,000.  While Eagle One is unable to point to which of the American Express invoices represent actual work and which are fraudulent, the allegations are sufficiently detailed for Rule 9(b).  See Fuji, 640 F. Supp. 2d at 315 ("The Complaint alleges that many of the services for which [defendant] billed [plaintiff]

20

were never performed.  Although the Complaint does not identify the specific invoice descriptions that pertain to unperformed services, [plaintiff] has provided a schedule of all invoices submitted by [defendant].").  The invoices for both jobs are attached to the Amended Complaint as Exhibit 1.

"Yopp, as the owner of Accord and Accord Sales, would . . . issue and cause to be mailed by the United States mails and by interstate wire (fax and email) transmissions, invoices to Eagle One for work that was never done for or on behalf of Eagle One."  (Am. Compl. ¶ 78.) Carnabuci, the Accord bookkeeper, signed and sent the fictitious invoices.  (Ex. 1.)  Thus, "the fictitious invoices were fraudulent statements of fact that represented that the identified and stated work or expenses had been done or incurred, and the invoices were materially false statements uttered and issued by Yopp and Carnabuci to Eagle One, knowing that no funds were due."  (Am. Compl. ¶ 48.)  The Complaint also alleges, upon information and belief, that the various defendants knew of each other's actions.  (Am. Compl. ¶ 86.)  As stated above, there is no particularity requirement in pleading knowledge or intent.  One need only allege facts that carry a strong inference of fraudulent intent.  Attached to the Amended Complaint as Exhibit 4 are checks from Accord to Dawn Acquafredda and Anthony Sabatino that are signed by Yopp, totaling $184,086 over a period of eight months.  At the time, Dawn Acquafredda and Anthony Sabatino were employees of Eagle One, thus the unexplained checks from Accord strongly suggest that Yopp was knowingly participating in a scheme to defraud Eagle One.

It is not relevant that the allegedly fraudulent invoices were sent by Carnabuci only. "There is no requirement that the defendant him or herself use the mails.  It suffices if the defendant caused them to be used by an agent, or set in motion events which foreseeably would

21

involve their use." Chevron Corp. v. Donziger, 871 F. Supp. 2d 229, 250 (S.D.N.Y. 2012)

(citing United States v. Bortnovsky, 879 F.2d 30, 39 (2d Cir.1989)).  As discussed above, Yopp

and Carnabuci cannot claim that it was only Dawn Acquafredda who directed the enterprise.

Liability attaches to all defendants who took part in directing the enterprises affairs.  "RICO

liability is not limited to those with primary responsibility for the enterprise's affairs.  One is

liable under RICO if he or she has discretionary authority in carrying out the instructions of the

[conspiracy's] principals, or played some part in directing the affairs of the RICO enterprise."

Baisch v. Gallina, 346 F.3d 366, 376–77 (2d Cir. 2003) (citations omitted) (alteration in

original).

    In sum, the Complaint has identified the particular invoices believed to be false,

identified who made them, stated where and when they were made, and explained why they were

fraudulent.  See Fuji, 640 F. Supp. 2d at 310.  Accordingly, Eagle One has sufficiently pleaded

fraud with regard to Accord, Yopp, and Carnabuci.  Each individual fraudulent invoice can serve

as a predicate act of fraud.  Alternatively, each job collectively is a single act of fraud.

Regardless, Eagle One has established the necessary two predicate acts for a RICO claim.

    The court determined above that Eagle One failed to allege that Stankey participated in

the operation and management of the enterprise.  Here, the court additionally concludes that

Eagle One has failed to allege that Stankey committed the predicate acts of mail and wire fraud.

Eagle One alleges that Stankey "aided and abetted" in the issuance of the fraudulent invoices.

(Am. Compl. ¶¶ 48, 95.)  However, the Complaint does not describe any acts done by Stankey

in aid of this fraud.  "As with a claim of direct fraud, a claim for aiding and abetting fraud must

meet the strictures of Rule 9(b)."  Sierra Rutile Ltd. v. Katz, 90-CV-4913 (JFK), 1996 WL

22

556963, at *5 (S.D.N.Y. Oct. 1, 1996). <u>See also</u> <u>Rosner v. Bank of China</u>, 528 F. Supp. 2d 419, 425 (S.D.N.Y. 2007) ("The Second Circuit has applied the heightened pleading requirements of Rule 9(b) to claims for aiding and abetting fraud."). Unlike Yopp, who signed checks made out to the insider defendants, and unlike Carnabbuci, who sent the allegedly fraudulent invoices to Eagle One, no particular act of fraud is alleged regarding Stankey. "One of the primary purposes of the specificity requirement of Rule 9(b) "is to insure that the defendant receives fair notice of plaintiff's claim, and is thus able to prepare a defense." <u>Zigman v. Giacobbe</u>, 944 F. Supp. 147, 153 (E.D.N.Y. 1996). Here, no notice is given to Stankey as to what actions he has committed that constitute fraud. Merely alleging that Stankey aided and abetted in the alleged fraud, without more, is insufficient. <u>See</u> <u>Odyssey Re (London) Ltd.</u>, 85 F. Supp. 2d at 296 ("Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.").

For the foregoing reasons, Eagle One has sufficiently pleaded fraud with regard to Accord, Yopp, and Carnabuci, but it has failed to sufficiently plead fraud with regard to Stankey.

### b.    *The Acquafredda Defendants*

Dawn Acquafredda was the office manager at Eagle One, and was in charge of the accounts payable functions. (Am. Compl. ¶ 30.) Eagle One alleges that "Dawn Acquafredda received the fictitious Accord invoices, entered them into the Eagle One accounting system, and authorized the issuance of checks payable to Accord, which were then mailed or wired to Accord by the use and means of interstate commerce." (<u>Id.</u> ¶ 45.) Thus, Eagle One has identified the particular fraudulent acts allegedly committed by Dawn Acquafredda. It is Dawn Acquafredda's entering of the particular invoices into Eagle One's accounting system, and her authorization of checks payable to Accord pursuant to these fictitious invoices, that constitutes her acts of fraud,

23

or, alternatively, her aiding and abetting of the fraud committed by Accord.  As stated above, Eagle One alleges that this fraud was committed intentionally.  The facts alleged that show a strong inference of fraudulent intent are the unexplained checks from Accord to Dawn Acquafredda, made out during a period when Dawn Acquafredda was employed by Eagle One. (Id.)

Jack Acquafredda and Anthony Sabatino were field supervisors for Eagle One. (Id. ¶ 37.)  Their duties included "supervising the work of Eagle One subcontractors at the work sites."  (Id. ¶ 38.)  Eagle One alleges that they "aided and abetted the scheme by creating the false appearance that the work for which Accord was receiving payments was actually being done in the field, when in fact Accord was not doing any work for Eagle One and was not entitled to the payments."  (Id.)  As noted above, an allegation of aiding and abetting fraud is subject to the same heightened pleading standard as fraud itself.   Here, the Complaint fails to describe the fraudulent acts committed, or statements made, that created the false appearance of work being done.  It is not detailed enough to give the defendants notice of what they are being accused of.  While this would be sufficient under Rule 8(a), it fails to comply with the Rule 9(b) standard.  Thus, Eagle One has not sufficiently pleaded fraudulent conduct by Jack Acquafredda.

\*      \*      \*      \*

For the foregoing reasons, Eagle One has sufficiently pleaded fraud with regard to Accord, Yopp, and Carnabuci, and Dawn Acquafredda, but it has failed to sufficiently plead fraud with regard to Stankey and Jack Acquafredda.

24

4.    Racketeering Activity: Predicate Acts of Commercial Bribery

As alternative predicate acts for its RICO action, Eagle One alleges that all of the

defendants have violated New York's Commercial Bribery Act; the Accord defendants are

accused of giving bribes, and the insider defendants are accused of receiving bribes.  N.Y. Penal

Law §§ 180.03, 180.08.  These statute provisions state:

> A person is guilty of commercial bribing in the first degree when he confers, or
> offers or agrees to confer, any benefit upon any employee, agent or fiduciary
> without the consent of the latter's employer or principal, with intent to influence his
> conduct in relation to his employer's or principal's affairs, and when the value of
> the benefit conferred or offered or agreed to be conferred exceeds one thousand
> dollars and causes economic harm to the employer or principal in an amount
> exceeding two hundred fifty dollars.

N.Y. Penal Law § 180.03.

> An employee, agent or fiduciary is guilty of commercial bribe receiving in the first
> degree when, without the consent of his employer or principal, he solicits, accepts
> or agrees to accept any benefit from another person upon an agreement or
> understanding that such benefit will influence his conduct in relation to his
> employer's or principal's affairs, and when the value of the benefit solicited,
> accepted or agreed to be accepted exceeds one thousand dollars and causes
> economic harm to the employer or principal in an amount exceeding two hundred
> fifty dollars.

Id. § 180.08.

None of Defendants' memoranda responds to these allegations.  Nonetheless, the court

analyzes them to determine if they have been properly pleaded.[2]  The following paragraphs are

excerpts from the Complaint:

> 52. ...Eagle One has obtained cancelled checks issued by Accord, Inc. and Accord
> Sales, issued and signed by Yopp and made payable to Dawn Acquafredda and

---

[2] The Acquafredda defendants make a general claim that the Complaint fails to allege any illegal activity committed by Jack Acquafredda. (Acquafredda Reply Mem. at 6-8.) Similarly, the Accord defendants also claim that "no specific conduct is attributed to Stankey." (Accord Reply Mem. at 4.) These statements are taken as an argument that Eagle One has failed to assert any claim against these defendants, even though the memoranda do not address each claim in particular.

Anthony Sabatino. The checks, which evidence the kickback scheme, cover an eight-month period from May 22, 2014, through January 13, 2015.

53. Over that period, Yopp paid Dawn Acquafredda and Anthony Sabatino $184,086 by means of interstate banking facilities through two interstate banking institutions, the Bank of America and Capital One. The cancelled checks also show that Dawn Acquafredda, while on the Eagle One payroll, endorsed and deposited checks from Accord totaling $136,586 and that Anthony Sabatino, while on the Eagle One payroll, endorsed and cashed checks from Accord totaling $47,500. Copies of the cancelled checks are attached hereto as Exhibit 4.

57. The payments set forth above in paragraph 54 reflect the payment by Accord and Yopp to Dawn Acquafredda and Anthony Sabatino of bribes in violation of the commercial bribery and commercial bribe receiving prohibitions under the New York Penal Law §§ 180.03 & 180.08.

(Am. Compl. ¶¶ 52,53,57.)

For the following reasons, the court finds that Plaintiff has sufficiently pleaded the predicate act of commercial bribery against Yopp and Accord, but not against Stankey, and that Plaintiff has sufficiently pleaded the predicate act of commercial bribe receiving against Dawn Acquafredda, but not against Jack Acquafredda.

> a.    *The Accord Defendants*

Eagle One claims that, "[a]s set forth in paragraph 54 above, Yopp, aided and abetted by Stankey and Carnabuci, committed commercial bribery in violation of New York Penal Law § 180.03. (Am. Compl. ¶ 58.) However, neither paragraph 54 nor any of the other related paragraphs in the Complaint mentions Stankey or Carnabuci in the context of the allegation of commercial bribery. There is no explanation of what was done to aid and abet Yopp's act of bribery. Although commercial bribery claims do not require a heightened pleading standard, a plaintiff must do more than state a legal conclusion. The explicit reference and incorporation of

26

paragraph 54, which makes no mention of Stankey or Carnabuci, directly undermines Eagle One's claim that they too committed commercial bribery.

Eagle One has sufficiently pleaded the predicate act of commercial bribery against Yopp and Accord, but not against Stankey or Carnabuci.[3]

### b.   *The Acquafredda Defendants*

Eagle One alleges that, "as set forth in paragraph 54 above, Dawn Acquafredda, Anthony Sabatino and Jack Acquafredda committed commercial bribe receiving in violation of New York Penal Law § 180.80." (Am. Compl. ¶ 59.) This statement, like the one analyzed in the previous section, ignores that paragraph 54 only refers to Anthony Sabatino and Dawn Acquafredda, and not Jack Acquafredda. The conclusion that Eagle One has not pleaded commercial bribery against / by Jack Acquafredda is reinforced by the fact that the Accord checks discovered by Eagle One were only made out to Anthony Sabatino and Dawn Acquafredda. Merely stating that Jack Acquafredda committed commercial bribe receiving is insufficient. However, Eagle One has sufficiently pleaded commercial bribe receiving by Dawn Acquafredda and Anthony Sabatino. Although the checks in Exhibit 4 only cover an eight-month period, less than the two years required to show continuity, Eagle One alleges that "the Accord defendants made other payments, directly or indirectly to Dawn Acquafredda and Anthony Sabatino." (Id. ¶ 55) Because commercial bribery does not require a heightened pleading standard, this is sufficient. Each check exceeding $1,000 constitutes a separate act of bribe receiving.

Thus, Plaintiff has sufficiently pleaded that Dawn Acquafredda committed commercial bribe receiving, but its allegations against Jack Acquafredda fail.

---

[3] Because, as discussed above, Eagle One has sufficiently pleaded that Carnabuci committed predicate acts of fraud, the failure to allege bribery does not absolve her of RICO liability.

5.    Racketeering Activity: Other Predicate Acts

The checks from Accord to Dawn Acquafredda, signed by Yopp, also support Eagle One's allegations that Defendants violated the predicate acts of "18 U.S.C. § 1952 (racketeering); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. 1957(a) & (f) (monetary transactions in criminal proceeds); 18 U.S.C. § 2314 (transportation of stolen property); 18 U.S.C. §1952(a) (travel act criminal activity)." (Id. ¶ 91.) Because Eagle One has already sufficiently alleged the predicate acts of either fraud or bribery with respect to Yopp, Carnabuci, Accord, Dawn Acquafredda, and Sabatino, the court need not analyze further alternative predicate acts with respect to these defendants. However, insofar as these predicate acts are based on the checks from Yopp to Dawn Acquafredda and Sabatino, they do not support any inference of liability for Jack Acquafredda or Stankey. This limitation is confirmed by the Complaint, which states that "Defendants Yopp, Dawn Acquafredda and Anthony Sabatino committed the following predicate acts in connection with the specifically identified banking transactions set forth in paragraph 54 above. . . ." (Am. Compl. ¶ 98.)

Because Eagle One has failed to allege any racketeering predicate acts by Jack Acquafredda or by Stankey, the motion to dismiss is granted with respect to all claims against them.

6.    Pattern of Racketeering

Finally, in order to demonstrate a pattern of racketeering, Plaintiff's Complaint must demonstrate that "the defendants (1) committed at least two predicate acts of racketeering within ten years of one another, see 18 U.S.C. § 1961(5); (2) that these racketeering predicates are interrelated; and (3) that they reveal continued, or the threat of continued, racketeering

28

activity." Leung v. Law, 387 F. Supp. 2d 105, 123 (E.D.N.Y. 2005) (citing United States v. Diaz, 176 F.3d 52, 93 (2d Cir. 1999)).

The first two of these conditions are easily met. Plaintiff alleges that Defendants submitted fraudulent invoices in relation to two jobs: 55 Water Street, and American Express. These jobs, and the multiple invoices associated with them, were within 10 years of each other. These frauds, being of the same form, and committed against the same company, were clearly interrelated.

Assessing whether the third prong of the standard has been met requires more extensive discussion. "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). This continuity requirement may be satisfied by either an open-ended or closed-ended pattern of racketeering activities. Id. at 241.

Open-ended continuity describes "past conduct that by its nature projects into the future with a threat of repetition." Id. at 241. The Second Circuit has directed district courts to look first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed in assessing whether a threat of continuity was presented by an open-ended series of predicate acts. See, e.g., GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir. 1995); United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); United States v. Kaplan, 886 F.2d 536, 542 (2d Cir. 1989). Thus, an inherently unlawful act performed on behalf of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity. Aulicino, 44 F.3d at 1111. Similarly, where the defendants have engaged in acts which are "inherently unlawful," such as murder and

29

kidnaping, the threat of continuity is also deemed to be present. Id. at 1111, 1113. Where the nature of the conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other factors, such as the number of victims, the breadth of the scheme, and the defendants' "continuing intent and ability to participate in various ways in the corruption of the enterprise" in determining whether the defendants' activities posed a threat of continuity. Kaplan, 886 F.2d at 542–43. A fraudulent scheme that targets a single business or person is deemed to be "inherently terminable," and thus incapable of presenting an open-ended threat of continuing criminal activity. GICC, 67 F.3d at 466. See also Efron v. Embassy Suites, 223 F.3d 12, 17–21 (1st Cir. 2000) (collecting cases).

Here, the conduct alleged to have been committed by Defendants are fraud, bribery, and money laundering that targeted a single business. (Am. Compl. ¶ 91.) This thus is not "inherently unlawful" activity that implies continuity; therefore, Plaintiff's allegations cannot be supported by the existence of open-ended continuity.

A plaintiff can also satisfy the continuity element of the RICO statute's pattern requirement by alleging that the defendants were engaged in a closed-ended pattern of racketeering activities. Closed-ended continuity describes a finite, pre-litigation period of repeated conduct over a time period of substantial duration. H.J., Inc., 492 U.S. at 242. Predicate acts extending over only a few weeks or months do not satisfy the substantial duration element. Id.; see also GICC, 67 F.3d at 467 (collecting cases and observing that a period of less than two years rarely will satisfy the substantial duration requirement); Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008) ("Since the Supreme Court decided H.J.

30

Inc., we have never held a period of less than two years to constitute a substantial period of time." (Citation omitted)).

Plaintiff alleges that the fraudulent scheme took place "from at least July of 2012 through January of 2015." (Am. Compl. ¶ 46.) This allegation is supported by the invoices that establish that the 55 Water Street job lasted from September 2013 through January 2015, and that the American Express job lasted from July 2012 through October 2014. (Am. Compl. ¶¶ 47-49.) Because the court has previously determined that Plaintiff has sufficiently pleaded claims of fraud and bribery, Plaintiff has pleaded a pattern of at least two predicate acts of racketeering (the fraudulent invoices from the 55 Water Street job and the American Express job, and the checks from Accord to Eagle One employees), within ten years of each other, that extended for a period longer than two years.

*     *     *     *

In sum, the RICO claims against Accord, Yopp, Carnabuci, and Dawn Acquafredda survive the motions to dismiss. The RICO claims against Stankey and Jack Acquafredda are hereby dismissed.

## C.    RICO Conspiracy

Defendants argue that Eagle One has failed to plead a RICO conspiracy claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of [§ 1962 (a)-(c)]." Defendants claim that because Eagle One's substantive RICO claims are deficient, the conspiracy claim must fail as well. (Accord Mem. at 18; Acquafredda Mem. at 18.) Because the court has determined that substantive RICO claims have been successfully alleged against Accord, Yopp, Carnabuci, and Dawn Acquafredda, the court must

31

reject Defendants' argument that the conspiracy claims should be dismissed for failure to allege a substantive RICO violation.  See SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 81 (E.D.N.Y.2006) ("Because the court holds that Plaintiff has properly alleged a RICO claim, the court denies the motion to dismiss the conspiracy claim.").  The Accord defendants also argue that the Eagle One has failed to sufficiently allege an agreement among the defendants to further the conspiracy.  (Accord Mem. at 18.)  This argument fails as to Dawn Acquafredda, Yopp, Carnabuci, and Accord.

"To establish a RICO conspiracy, a plaintiff must plead that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." N.Y. Dist. Council of Carpenters Pension Fund v. Forde, 939 F. Supp. 2d 268, 282 (S.D.N.Y. 2013).  "In doing so, a defendant need not agree specifically to commit at least two predicate acts; instead, a defendant may violate § 1962(d) if he or she 'commit[s] at least two acts of racketeering activity' and 'knew about and agreed to facilitate the scheme.'" Angermeir v. Cohen, 14 F. Supp. 3d 134, 154 (S.D.N.Y. 2014) (citing Salinas v. United States, 522 U.S. 52, 66 (1997)).  A plaintiff must allege facts that would demonstrate such an agreement.  See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990).  However, "a defendant's agreement to join a conspiracy can be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing." Forde, 939 F. Supp. 2d at 282 (quotation marks omitted).  Additionally, "the [c]ourt analyzes the Complaint's allegations of a § 1962(d) conspiracy under the more liberal pleading requirements of Rule 8(a)." Angermeir, 14 F. Supp. 3d at 154–55 (citation omitted).

The Complaint alleges that "sometime before January 2012, the individual defendants . . . entered into a scheme to embezzle Eagle One funds. The agreement and conspiracy involved having Defendant Yvonne Carnabuci, as the Accord bookkeeper, issue and send . . . to Dawn Acquafredda fictitious invoices on the letterhead of Accord for work that was never done by Accord." (Am. Compl. ¶¶ 40-41.) This conclusory allegation on its own would not support a claim of conspiracy. Here, however, Eagle One has also pleaded specific facts from which it can be inferred that Defendants entered into such a conspiracy: Eagle One alleges that the Accord defendants sent false invoices, which Dawn Acquafredda processed; and, in return, Dawn Acquafredda received money from Accord in kickback payments. These specifically alleged facts support Eagle One's allegation that such a conspiracy existed. See Angermeir, 14 F. Supp. 3d at 155 (collecting cases).

Eagle One has failed to plead substantive RICO violations by Stankey or Jack Acquafredda. Therefore, Eagle One's conclusory allegation that they too "entered into a scheme to embezzle Eagle One funds" (Am Compl. ¶ 40) is insufficient, and the RICO conspiracy charges against them are dismissed. See Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1062–63 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present [§ 1962(d)] claim does not set forth a conspiracy to commit such violations.").

**D.    State Law Claims**

In order to determine whether Plaintiff's state law claims should be dismissed, the court explores when a federal court should exercise supplemental jurisdiction.

28 U.S.C. § 1367(a) provides that, subject to the requirements of § 1367(b) and (c), district courts may exercise supplemental jurisdiction over claims that form part of

33

> the "same case or controversy" as a claim over which the court has original jurisdiction. To determine whether claims form part of the "same case or controversy," the [c]ourt should ask whether the claims "derive from a common nucleus of operative fact." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir.2006) (citation and internal quotation marks omitted).

Jones v. Nickens, 961 F. Supp. 2d 475, 495 (E.D.N.Y. 2013). As for determining whether two disputes arise from a "common nucleus of operative fact," courts look to whether "'the federal claim necessarily brought the facts underlying the state claim before the court.'" Id. (quoting Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000).

Applying this rule, with Plaintiff's federal RICO and RICO conspiracy claims surviving with respect to Accord, Yopp, Carnabuci, and Dawn Acquafredda, the court exercises supplemental jurisdiction over Plaintiff's state law claims as to these defendants, because the federal claims against these defendants necessarily bring before the court the facts underlying the state claims against these defendants. The federal claims against Accord, Yopp, Carnabuci, and Dawn Acquafredda do not, however, necessarily bring before the court the facts underlying the state claims against Stankey and Jack Acquafredda. Thus, the court declines to exercise supplemental jurisdiction over the state law claims against Stankey and Jack Acquafredda.

With the jurisdictional hurdle having been cleared as to the state law claims against Accord, Yopp, Carnabuci, and Dawn Acquafredda, the court proceeds to address whether these claims should nonetheless be dismissed. For the following reasons, all of the state law claims against these defendants survive. As to the state claims against Sabatino, as was the case for the federal claims against Sabatino, these claims survive because Sabatino did not move to dismiss any of the claims against him.

34

1.    Fraud

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material

misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the

defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5)

which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783

F.3d 395, 402 (2d Cir. 2015).

Defendants argue that that the fraud claim has not been sufficiently pleaded with the

particularity required by Rule 9(b). (Accord Mem. at 20-21.)  However, as discussed above,

Plaintiff's fraud claims are sufficiently pleaded against Dawn Acquafredda, Accord, Carnabuci,

and Yopp.  Defendants also attempt to argue that Plaintiff has failed to allege scienter (id.), but

the Complaint specifically alleges that Defendants entered into an agreement and conspiracy to

defraud Eagle One (Am. Compl. ¶ 76).  For issues of intent at the pleading stage, more is not

required.

Plaintiff's claims for fraud may proceed as to Dawn Acquafredda, Accord, Carnabuci,

and Yopp.

2.    Fraudulent Concealment

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to

disclose material facts; (2) knowledge of material facts by a party bound to make such

disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6)

damages." Woods v. Maytag Co., 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011) (citing Aetna Cas.

& Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 582 (2d Cir. 2005)).  "With respect to the

duty to disclose, 'New York recognizes a cause of action to recover damages for fraud based on

concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair.'" Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (citing Miele v. Am. Tobacco Co., 2 A.D.3d 799, 803 (2d Dep't 2003)); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) ("New York recognizes a duty to disclose by a party to a business transaction in three situations: first, where the party has made a partial or ambiguous statement . . . second, when the parties stand in a fiduciary or confidential relationship with each other . . . and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." (citation omitted)).

Here, Eagle One has alleged that it paid Accord based on invoices Accord knew to be false. (Am. Compl. ¶¶ 119-123.) Dawn Acquafredda, as an employee of Eagle One, had a fiduciary duty to inform Eagle One of the fraudulent invoices. Yopp and Carnabuci had no fiduciary relationship to Eagle One, but they allegedly made false statements and had superior knowledge, which creates a duty to disclose. See Martin, 137 F. Supp. 3d at 484. Defendants knew that the transaction, Eagle One's payment of the Accord invoices, was made based on the fraudulent invoices. Accordingly, Plaintiff has adequately pleaded that Defendants had a duty to disclose matter of which they had superior knowledge, and that Plaintiff's reliance on Defendants misrepresentations caused them damages.

Therefore, Plaintiff's claims for fraudulent concealment may proceed as to Dawn Acquafredda, Accord, Carnabuci, and Yopp.

36

3.   Conversion

"The elements of conversion under New York law are (1) plaintiff's possessory right or interest in the property and (2) defendants' dominion over the property or interference with it, in derogation of plaintiff's rights." DDR, 770 F. Supp. 2d at 660 (citations omitted). "An action for conversion of money may be made out where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." Thys v. Fortis Sec. LLC, 74 A.D.3d 546, 546 (N.Y. App. Div. 2010).

As a preliminary matter, Defendants argue that, where a conversion claim is premised on an allegation of fraud, it is subject to the heightened pleading requirements of Rule 9(b). (Accord Mem. at 22.) "Rule 9(b) does not apply only to claims under RICO and common law fraud, but also to elements of other claims that are premised on fraud." Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (citing O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991)). The same point may be made regarding Plaintiff's other claims premised on fraud, such as the claim for breach of fiduciary duty. See Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct."). However, it is the underlying claim of fraud that must be pleaded with particularity, not the other elements of conversion. In other words, Eagle One must allege with particularity what was fraudulent in how Defendants obtained the funds, but not how Defendants exercised dominion over the funds. The Complaint need not allege, for example, which bank Defendants deposited the money in. It is also unnecessary for Plaintiff to allege how the funds were divided amongst the individual defendants. It is sufficient for the Complaint to

37

allege that the proceeds were distributed amongst the defendants. Because the court held above that Eagle One's fraud claims satisfied Rule 9(b)'s requirements, Eagle One has sufficiently pleaded the fraud on which the conversion claim is based with particularity.

Defendants also argue that Plaintiff's conversion claim must be dismissed because it fails to identify the specific funds converted. (Accord Mem. at 23.) This is because "the $1.3 million in question was presumably comingled in Eagle One's account with the other revenue collected," and "assuming certain funds were improperly sent to Accord, presumably, these funds were comingled with monies appropriately paid to Accord." (Id.) However, "[f]unds may be 'specifically identifiable' despite the fact that they are not alleged to be held in a segregated account." Kirschner v. Bennett, 648 F. Supp. 2d 525, 542 (S.D.N.Y. 2009) (citing LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir.1997)); Lopresti, 126 F.3d at 42 (finding that the fact that employees' union dues were not segregated, but instead placed in the company's general account "does not mean that those monies are not a specific identifiable thing for purposes of imposing liability for conversion").

Here, Eagle One has specifically identified the funds that were obtained through allegedly fraudulent invoices related to the 55 Water Street job and The American Express Job. The fact that they may now be comingled in Defendants' accounts with other funds does not defeat this claim. See Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 352 (S.D.N.Y. 2015).

Therefore, Plaintiff's claims for conversion may proceed as to Dawn Acquafredda, Accord, Carnabuci, and Yopp.

4.    Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000)). "Unjust enrichment is a quasi-contractual claim which creates an obligation in law in the absence of any agreement." Allstate Ins. Co. v. Bogoraz, 818 F. Supp. 2d 544, 552 (E.D.N.Y. 2011) (citing Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572 (N.Y. 2005)).

Eagle One has adequately pleaded that Defendants benefited by receiving payment from Eagle One to which Defendants were not entitled since, allegedly, no work was actually done by Accord.

Therefore, Plaintiff's claims for unjust enrichment may proceed as to Dawn Acquafredda, Accord, Carnabuci, and Yopp.

5.    Breach of Fiduciary Duty (Dawn Acquafredda)

"The elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." Meisel v. Grunberg, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009) (citing Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir.1986)). "A fiduciary relationship requires 'great confidence and trust on the one part and a high degree of good faith on the other part.'" Meisel v. Grunberg, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009) (citing United States v. Chestman, 947 F.2d 551, 569 (2d Cir. 1991)). "The determination of whether a fiduciary duty exists cannot be determined by recourse to rigid formulas." Iannuzzi v. Am. Mortg. Network,

Inc., 727 F. Supp. 2d 125, 137 (E.D.N.Y. 2010) (citation omitted). When examining whether a

fiduciary relationship exists under New York law, a court examines "whether one person has

reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting

superiority or influence over the first." Teachers Ins. & Annuity Ass'n of Am. v. Wometco

Enters., Inc., 833 F. Supp. 344, 349–50 (S.D.N.Y. 1993).

The Acquafredda defendants argue that Dawn Acquafredda had no fiduciary duty to

Eagle One because she was no longer president. (Acquafredda Mem. at 22-23.) Defendants also

state: "It is well settled law in New York that 'an employer-employee relationship is not

fiduciary in nature.'" (Id. (citing Lind v. Vanguard Offset Printers, 857 F. Supp. 1060, 1067

(S.D.N.Y. 1994)).) However, Lind stands only for the proposition that an employee-employer

relationship is not necessarily a fiduciary relationship. Here, Dawn Acquafredda was the

manager in charge of the accounts payable responsibilities. (Am. Compl. ¶ 28.) She had

previously been president and sole shareholder of the company. This supports a finding that she

had superior access to information, and that she was relied upon by Eagle One. See also

Naughright v. Weiss, 826 F. Supp. 2d 676, 690–91 (S.D.N.Y. 2011) (holding that superior

knowledge can create a duty to disclose if "a party (1) has superior knowledge, (2) that is not

available to the other party by reasonable inquiry, and (3) the first party knows that the second

party is acting on the basis of mistaken knowledge.") (citing Aetna Cas. & Sur. Co. v. Aniero

Concrete Co., 404 F.3d 566, 582 (2d Cir.2005)).

Therefore, Plaintiff's claims for breach of fiduciary duty may proceed as to Dawn

Acquafredda.

40

6.    Aiding and Abetting a Breach of Fiduciary Duty (Accord Defendants)

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006) (citing Kaufman v. Cohen, 760 N.Y.S. 2d 157, 169 (App. Div. 2003)); Kaufman, 760 N.Y.S. 2d at 169 ("Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty. . . . A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator.").

The Accord defendants argue that they cannot be liable for aiding and abetting a breach of fiduciary duty because the primary breach has not been sufficiently alleged. (Accord Mem. at 24-25.) Alternatively, the Accord defendants argue that there is no factual basis for the claim that Accord had knowledge of, or assisted in, the breach committed by the insider defendants. The court has already determined, above, that a primary breach was sufficiently alleged against Dawn Acquafredda. The Complaint also alleges that Defendants were aware of each other's actions. (Am. Compl. ¶ 86.) Finally, by performing their part in the fraudulent enterprise, the Accord defendants allegedly provided substantial assistance to Dawn Acquafredda's breach of fiduciary duties.

Therefore, Plaintiff's claims for aiding and abetting a breach of fiduciary duty may proceed as to Accord, Carnabuci, and Yopp.

41

7.    Faithless Servant Claim (Dawn Acquafredda)

"Under New York law, an agent is obligated to be loyal to his employer and is prohibited

from acting in any manner inconsistent with his agency or trust and is at all times bound to

exercise the utmost good faith and loyalty in the performance of his duties." Phansalkar v.

Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (citations and internal

quotations omitted). An employee who violates this duty generally forfeits all compensation

owed by the employer. See Feiger v. Iral Jewelry, Ltd., 363 N.E.2d 350 (N.Y. 1977) (citing

Restatement (Second) of Agency (1958), § 469). Furthermore, the employer is entitled to the

return of all compensation paid to the employee during the period in which the employee was

disloyal. See Maritime Fish Prods., Inc. v. World–Wide Fish Prods., Inc., 474 N.Y.S. 2d 281

(App. Div. 1984).

Eagle One has sufficiently alleged that Dawn Acquafredda engaged in deceit that harmed

the company in return for bribes received from Accord. Therefore, Plaintiff's faithless servant

claim may proceed as to Dawn Acquafredda.

\*        \*        \*        \*

In sum, and for the foregoing reasons, all of the state law claims against Accord, Yopp,

Carnabuci, and Dawn Acquafredda survive the motions to dismiss.

42

## IV.    CONCLUSION

In sum, the Acquafredda defendants' motion to dismiss (Dkt. 46) is GRANTED IN PART and DENIED IN PART, and the Accord defendants' motion to dismiss (Dkt. 47) is GRANTED IN PART and DENIED IN PART.

As to Raymond Stankey and Jack Acquafredda, Eagle One's RICO claims, RICO conspiracy claims, and all state law claims are DISMISSED WITHOUT PREJUDICE.  As to Dawn Acquafredda, Accord, Inc., Accord Sales, Inc., Yvonne Carnabuci, and Richard Yopp, Jr., Eagle One's RICO claims, RICO conspiracy claims, and all state law claims remain. Additionally, because Anthony Sabatino did not move to dismiss any of the claims against him, all claims against him also remain.

SO ORDERED.

Dated: Brooklyn, New York
       March  3/  , 2018

NICHOLAS G. GARAUFIS
United States District Judge